WILLIAM L. STOCKTON ET AL. *v.* THOMAS R. CALDWELL ET AL.

1. STOCK LAW. *Code* 1892, § 2056. *Amended Laws* 1900, *p.* 164. *Municipalities. Freeholders of. Petitioners.*

   The freeholders and qualified leaseholders resident in a municipality, wholly included within the territory over which an absolute stock law is intended to operate, are entitled to petition for or against the putting of the law in force, under Code 1892, § 2056, amended Laws 1900, p. 164, ch. 124, providing that the board of supervisors, on the petition of two-thirds of all resident freeholders and leaseholders for a term of three years or more, may declare the stock law in force in the county or in one or more townships thereof.

2. SAME. *How counted if not on petition.*

   Where the freeholders and leaseholders of a municipality were not given an opportunity to sign a petition for the establishment of such law, they should, by operation of law, be counted against it.

3. SAME. *Powers of municipalities. Effect.*

   The fact that all municipalities are vested with power to prevent or regulate the running at large of animals of all kinds within corporate limits does not deprive the freeholders and leaseholders residing within such limits of their right to petition.

FROM the circuit court of Monroe county.

HON. EUGENE O. SYKES, Judge.

Caldwell and others, the appellees, filed their petition to the board of supervisors of Monroe county, asking that the stock law be declared in force in certain territory in the county described in the petition. Stockton and others, appellants, on application, were admitted to contest the petition. The town of Amory was included in the territory, and the leaseholders and freeholders residing in that town were not asked to sign the petition, and did not sign it. Counting them against the petition, it lacked the requisite two-thirds majority. After hearing the cause, the board of supervisors granted the prayer of the petition and declared the stock law in force. The con-

testants appealed to the circuit court, where the order of the board of supervisors was affirmed. From that judgment they appeal to the supreme court.

*W. L. Tubb,* for appellants.

Under the statute, those seeking to have the stock law declared in force, in any township or any part of the county, must procure the affirmative action, either by signature to petition or by ballot, of two-thirds of all the resident freeholders and leaseholders for three or more years of the proposed district; every person residing within the boundary limits of the proposed district and owning a freehold estate located therein has the right to participate in the contest, if of sufficient age and intelligence to exercise that right. This court will observe that the town of Amory is about the center of the proposed district.

By what process of reasoning can the freeholders residing in the town be excluded? They are certainly within the boundaries of the proposed district, they own land therein, they are freeholders; then why exclude them? It will not do to answer simply: Because they live in town. That is no reason, that is no crime, that is no disqualification. Are they not sufficiently intelligent to act upon a matter of this kind? Certainly so. The answer may be made: They are not farmers, do not own farm lands, and hence are not interested directly in the question. But many of them are farmers, and, as shown by this record, some of these freeholders living in the town are not only owners of land located in the corporate limits, but are owners of farm lands located without the town limits and within the proposed district. Besides, the statute lays no such test. It matters not whether a man runs a farm or a brick kiln, if he is a *bona fide* freeholder within the proposed district, he has the right to participate. The answer will also, perhaps, be made that in this particular instance Amory is a town of more or less importance, having the right to make its own laws by ordinance, regulating the run-

ning at large of stock. That is not an answer to the question; for it is not discretionary with the town authorities to have the stock law or not after it has already encroached upon them by the acts and votes of the outsiders. If they are not entitled to vote in such contests, what privileges have the town inhabitants? The stock law is all around them; they have to submit to it whether they want to or not. Take the village of one hundred inhabitants that barely keeps up a municipal government. Why should not its freehold inhabitants be as much entitled to participate in a contest of this kind as the man on his farm immediately outside the limits of the village corporation? And if the village freeholders can participate, why not the town freeholders? There is no difference in principle. Suppose the largest farmer in the whole community happens to reside with his family in the village or in the town, and a stock-law contest is in progress; would it not be a monstrous proposition that he could not participate?

*Gilleylen & Leftwich,* for appellees.

In establishing this stock-law territory, the freeholders in the town of Amory were not consulted in dealing with this proposition. The statute we are here considering, Laws 1900, ch. 124, must be construed so as to harmonize with the whole body of our law; this is a canon of construction never violated. Now it is shown in the record and admitted by all that the town of Amory, containing from 1,200 to 2,000 inhabitants, is governed by ch. 93 of the code entitled "Municipalities." By sec. 2975 of that chapter the authority to deal with all animals to run at large is conferred on the mayor and board of aldermen. It is taken away from the power of the supervisors and vested in another legal body. As written in the code, that section is made to apply only to cities and towns of more than 1,000 inhabitants, but the section has been so amended by Acts 1896, ch. 167, as to make it apply to all towns and villages. The amendment does not affect this case, however, since this town is admitted to

contain more than 1,200 people.  The town of Amory is *imperium in imperio*.  The board of supervisors had no more authority over that town in establishing a stock law within the municipal lines than the mayor and board of aldermen of that town and the citizens living within it have with establishing a stock law outside of town.  It was useless in drawing the boundaries of the stock law in the petition to exclude the town from its operation, and it was just as useless when the board of supervisors established the stock law to except the town which happened to be within the territory from the operation of its order.  Its order could not possibly have any effect within the municipal boundaries; and, therefore, why except the town from its operation?  The law obstructed the force and effect of the order of the board when it reached the legal boundaries of the municipality.  It stopped there at the behest of the law.  There was no need of the board speaking to that effect; the louder, the stronger voice of the law had already spoken, and it continues to speak.  The solid wall of the law cuts off Amory.

TRULY, J., delivered the opinion of the court.

The town of Amory being included entirely within the territory over which the absolute stock law was intended to operate, the freeholders and duly qualified leaseholders resident therein were entitled to be consulted in reference to the establishment of the law.  Unless the question has been submitted to a vote, the statute requires the presentation of an affirmative petition of two-thirds of all resident freeholders and leaseholders for a term of three years or more as a condition precedent to the passage of any order by the board of supervisors declaring any stock law to be in force.  The fact that all municipal authorities are vested with power to "prevent or regulate the running at large of animals of all kinds" within the corporate limits of their respective municipalities does not deprive the freeholders and leaseholders residing in such municipalities of their right to petition either for or against the establishment by the board

of supervisors of a stock law which embraces the municipality within the territory covered by such law. If a board of supervisors, in pursuance of the result of an election or upon proper petition, were to "declare the stock law in force in the whole county" and to "allow crops of all kinds to be cultivated without fences," clearly the several municipalities within the county would be bound thereby; otherwise it would be necessary to fence each city, town, and village to itself. A consideration of Code 1892, §§ 2056, 2060, 2063, in connection one with the other, makes it manifest that it was not the legislative design to except the territory lying within a municipality from the operation of a lawfully established stock law by which it is completely surrounded and covered. The leaseholders and freeholders resident in the town of Amory, not having signed the petition, must, by operation of law, be counted against it; and, this being done, it is conceded that the petition lacked the requisite majority.

*Reversed and remanded.*